[No. 1329, August 22, 1910.]

THE COSTILLA LAND AND INVESTMENT COMPANY, Appellee, v. ROBERT ALLEN, et al., Appellants.

### SYLLABUS (BY THE COURT.)

1. Proceedings to punish for contempt are deemed criminal in their nature when the purpose is primarily punishment.

2. Where the purpose of such proceeding is primarily compensatory or by way of reimbursement to the opposite

party for expenses growing out of the alleged contempt the proceeding is deemed civil.

3. While the border line between the two classes of proceedings is often indistinct, the question of whether the offender is a party to the suit, whether the proceedings are before final decree and whether the fine goes to the public or a party to the litigation are often determinative considerations.

4. No appeal lies in this Territory from a judgment for what is classed as a criminal contempt. Marinan v. Baker, 12 N. M. 451, followed.

5. An order imposing a fine, payable by way of reimbursement to the opposite party, for violation of a preliminary injunction is an interlocutory order in a civil proceeding and review of such an order can be entertained only after final decree and in connection with an appeal therefrom.

Appeal from the District Court of Taos County before JOHN R. McFIE, Associate Justice. Appeal Dismissed.

A. C. VOORHEES for Appellant.

ABBOTT & ABBOTT, BROOKS & SMITH, and CHARLES J. HUGHES for Appellee.

No briefs filed.

## STATEMENT OF THE CASE.

The Costilla Land and Investment Company, a corporation, filed their complaint against Allen and others alleging ownership in the south half of what is known as the Sangre de Cristo Grant and further alleging that the defendants "have wrongfully and unlawfully slandered the title of your plaintiff and have by false rumors alleged that said plaintiff has no title to said land and is without title to said portions thereof and has wrongfully and unlawfully claimed that the boundaries thereof are not where they properly belong by the grants and patent of same; and

wrongfully and unlawfully contend that each part and portion of the land of plaintiff is the land of the United States and the said defendants; and the defendants threaten to take possession of certain portions of the land, water, pasture, woods and right of plaintiff situate within the boundary and description of said grant, * * * * and are trying to induce others to take possession of said lands and are threatening to pasture large herds of sheep and other stock upon said tract and are threatening to hold and retain other large tracts of land belonging to this plaintiff and to induce others to do the same and are threatening to fence large tracts of said land owned by said plaintiff and are now threatening to exclude this plaintiff, its agents, servants and tenants, and are threatening to prevent its agents and tenants from entering said land and from pasturing their sheep on plaintiffs' said land to the great and irreparable damage to this plaintiff in the sum of $10,000."

The complaint prays damages, a decree quieting title and an injunction against the acts and pretensions of the defendants as above outlined.

The court ordered a preliminary injunction as prayed, upon the giving of bond. This latter was done and the defendants answered to the merits of the action, which, however, as yet remains untried. Subsequent to the filing of the answer the plaintiffs filed a motion supported by affidavits alleging that the defendants had violated the terms of the injunction and praying that they be ordered to show cause why they should not be punished for contempt. The rule issued and upon hearing and after the taking of much testimony eight of the defendants were adjudged in contempt "in having wilfully disobeyed the injunction which issued out of this court in the above entitled action on towit, the 26th day of July, A. D., 1906, in that they, and each of them, have continued to trespass upon the lands in controversy in the above entitled cause by enlarging their possessions thereon, constructing additional fences and buildings upon said lands, and have committed waste on said lands by cutting hay therefrom and selling the same for profit, and have slandered the title of the above named plaintiff to said lands."

The court fined each of said defendants twenty-five dollars together with costs "to be paid to the clerk of this court for the use of the above named plaintiff" and ordered that each of said defendants "be committed by the sheriff of the County of Taos, Territory of New Mexico, to the county jail of said county, to be there detained in close custody until he pays said sum or be discharged according to law." The defendants prayed and were allowed an appeal from this decision. The case is now before us on a motion to dismiss the appeal.

### OPINION OF THE COURT.

POPE, C. J.—(After making the foregoing statement of the facts). The motion to dismiss the appeal proceeds upon the ground that the action of the court in fining the defendants for contempt is not appealable. It is argued that if the contempt proceedings be deemed criminal and punitive in their nature no appeal lies, since it was held by this court in Marinan v. Baker, 12 N. M. 451, that under C. L. Sec. 3406 there is no right of appeal in a criminal case except "from a final judgment rendered *upon an indictment;*" and on the other hand, if a civil and remedial proceeding that the decision rendered was interlocutory and not final and thus not appealable under Jung v. Myer, 11 N. M. 379, which declares that under the Organic Act appeals are permitted only from final decisions. These contentions involve a determination by us of whether the proceeding is criminal or civil, for if the former the appeal is clearly not maintainable under Marinan v. Baker, *supra.* Before proceeding to the consideration of the main question there is to be dealt with the contention of appellant that Marinan v. Baker is not in point because our statutes regulating appeals have been changed since that decision. We find no basis for this claim, however. Chapter 57 of the Laws of 1907, entitled "An Act providing appellate procedure in civil and criminal cases," by its section 47, simply re-enacts, but does not in the slightest change C. L. 3406, *supra,* which was the controlling statute in Marinan v.

Baker, and which, as we have seen, limits appeals in criminal cases to final judgments rendered upon indictments. Neither does section 1 of the Act of 1907, upon which appellant specially relies as changing the status, have that effect, since it is an exact copy of Sec. 161 of the Civil Code, in force when the Marinan case was decided, and for the further reason that it applies only to civil cases as witness the following language: "Any person aggrieved by any final judgment or decision of any district court in any civil case may, at his election take an appeal or sue out a writ of error," etc.

Deeming Marinan v. Baker controlling authority, if the decision complained of be for a criminal contempt, we proceed to determine whether such was criminal or civil and if the latter whether the action of the trial court was interlocutory or final.

The border line between what may be termed civil and what criminal contempt is, as has been pointed out by many authorities, exceedingly indistinct and narrow, leaving it often a question of extreme refinement as to whether the act was one or the other. Of course all judgments for contempt are in a sense punitive since the sentence imposed, even if simply to preserve private rights and even if the so-called fine go to the litigant purely by way of reimbursement, has the effect to punish the recalcitrant and to declare the purpose of the court that its orders shall not be trifled with. The authorities, however, draw a distinction between those contempts where the protection of the court and a vindication of its dignity are the main objects of the proceeding and those where a more effective remedy to private litigants is after all the purpose of what is done. Thus in In Re Nevitt, 117 Fed. 448, 458, quoted with approval in Bessette v. Conkey Co., 194 U. S. 328, it is said: "Proceedings for contempt are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the

remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce."

So in State v. Bland, 189 Mo. 197, 206, it is said: "Contempts have been divided into civil and criminal, into direct and constructive, into contempts which affect alone the dignity of the court and those which affect the beneficial rights of a party litigant, and there is a class of contempts in which both elements appear."

And referred to the difficulty of distinguishing between civil and criminal contempts the Missouri court in the same case (page 206) says: "An examination of the authorities will show that the line of demarcation between the different classes of contempts is often shadowy and does not run true, and that the learning on the question abounds with fine as well as superfine distinctions."

Among the *indicia* of criminal contempt, which have been deemed controlling in doubtful cases, are whether the respondent is or is not a party to the suit, whether the cause has gone to final decree, whether the punishment imposed is fine or imprisonment, and if a fine whether it is paid to the adverse litigant or to the public. A reference to some of the federal cases will illustrate the distinguishing features of the two classes of contempts. In ex parte Kearney, 7 Wheaton 37, the contempt consisted in improperly refusing to answer a question propounded the defendant as a witness. This was held to be a criminal contempt, since it struck at the very power of the court to proceed with its business. In New Orleans v. Steamship Co., 20 Wall. 392, upon like principle, the proceeding was held to be criminal where the mayor of the city of New Orleans had invoked the interposition of the state court in a matter within the scope of litigation already pending in the federal court, thus having been guilty of what was de--

clared to be an act "unnecessary, unwarranted in law and grossly disrespectful to the circuit court."

In Worden v. Searls, 121 U. S. 14, two fines were imposed for violation of the preliminary injunction, one for $250 to be paid directly to the complainant and the other for $1,182, "to be paid to the clerk of the court and by him to be paid over to the plaintiff for damages and costs." The court, influenced by the fact that these fines while nominally for contempt, were really to reimburse the plaintiff for his expenses and damages incident to a violation of the injunction, treated the contempt as civil and not criminal.

In O'Neal v. United States, 190 U. S. 36, where the act charged was an assault upon the referee in bankruptcy, the cause was deemed criminal. In Bessette v. Conkey Co., 194 U. S. 324, where the defendant was fined for violating a restraining order, it does not appear whether or not the fine went to the opposing party, but the court held it on the other grounds to be a criminal proceeding. The court said: "A significant and generally determinative feature (stamping it as civil) is that the act is by one party to a suit in disobedience of a special order made in behalf of the other," but added: "Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the right of the adverse party."

The court further said (p. 329) : "In the case at bar the controversy between the parties to the suit was settled by final decree and from that decree so far as appears no appeal was taken. An appeal from it would not have brought up the proceeding against the petitioner for he was not a party to the suit. Yet being no party to the suit he was found guilty of an act in resistance of the order of the court. His case therefore comes more fully within the punitive than the remedial class. It should be regarded like misconduct in a court room or disobedience of a subpoena, as among those acts primarily directed against the power of the court."

The ground of the court's conclusion that the proceeding was essentially criminal is shown by the concluding

portion of the opinion where the court limits its conclusion only to "such cases of contempt as the present—that is, cases in which the proceedings are against one not a party to the suit and cannot be regarded as interlocutory."

In the Matter of Christensen Engineering Co., 194 U. S. 458, the court thus distinguishes the facts of that case from the case just discussed: "In that case Bessette was not a party to the suit, and the controversy had been settled by a final decree, from which, so far as appeared, no appeal had been taken. He was found guilty of contempt of court, and a fine of $250 imposed, payable to the United States, with costs. In this case the Christensen Engineering Company was a party. The contempt was disobedience of a preliminary injunction and the judgment in contempt was intermediate the preliminary injunction and the decree making it permanent. The fine was payable, one-half to the United States, and the other half to the complainant."

In the Christensen case, however, the court held the contempt to be criminal upon the ground that the fine, being partly payable to the United States, "was clearly punitive and in vindication of the authority of the court," and as such dominated the proceedings and fixed its character. In that case the court refers to ex parte Debs, 159 U. S. 259, and says: "In that case there was nothing of a remedial or compensatory nature. No fine was imposed but only a sentence of imprisonment." These expressions clearly show that the nature of the punishment is a controlling consideration in stamping the character of the proceeding. The cases in the inferior federal courts, as for instance Gould v. Sessions, 67 Fed. 163, are simply illustrative of the foregoing and do not call for special discussion.

The only case in this court dealing with this question is Marinan v. Baker, 12 N. M. 451 *supra*. There the defendants, who were parties to the original suit, had been proceeded against after final decree for violating the injunctive features of that decree and in punishment committed to the county jail. The court held the contempt a criminal one; and very properly so, under Bessette v.

Conkey, since after final decree, and especially so, under in re Christensen, since, as there remarked, a jail sentence is manifestly punitive rather than "remedial or compensatory."

Comparing the present case with those above outlined—and especially Worden v. Searls, 121 U. S. 14,—we are of opinion that the contempt here dealt with was civil rather than criminal. The defendants were parties to the suit, the fine was imposed prior to final decree, the fine went not to the public but to the plaintiff. The size of the fine is not such as to suggest punishment, as was the case in Christensen Co. v. Westinghouse Co., 135 Fed. 774, but rather a moderate reimbursement to plaintiff for the very evident expenses of enforcing obedience to the preliminary injunction. The fact that the court's decision provides for a commitment in case the fine is not paid is of no relevancy as designating the proceeding. That was the provision in Worden v. Searls, 121 U. S. 14, which, as we have seen, was nevertheless declared a civil proceeding. Such provision is to be deemed simply a means of executing collection of the fine or as it is expressed in In re Nevitt, 117 Fed. 448, 458, *supra,* "The commitment is in the nature of an execution to enforce the judgment of the court and the party in whose favor the judgment was rendered is the real party in interest in the proceedings."

We hold therefore, that the contempt here punished was civil and not criminal and that the case is not ruled by Marinan v. Baker, *supra.* The motion to dismiss must therefore, as to this ground, be overruled.

It remains to be declared whether the decision appealed from was interlocutory or final. We deem it settled by the controlling authority that it is the former. In Hayes v. Fischer, 102 U. S. 122, the defendant was ordered to pay the clerk $1,389.99 as a fine for violating an interlocutory judgment, to stand committed until the order was obeyed. The court said (the italics ours): "If the order complained of is to be treated as part of what was done in the original suit it cannot be brought here for review by writ of error. Errors in equity suits can only be corrected in this court on appeal *and that after a final decree.* This

Costilla Co. v. Allen.

order, if part of the proceedings in the suit, *was interlocutory only.*"

In Worden v. Searls, 121 U. S. 14, 26 *supra,* which as we have seen was a case of civil contempt, the court upon appeal from the final decree in the cause treated the orders fining the defendant as interlocutory and as made "in the course of the cause based on the questions involved as to the legal rights of the parties." Considering them as such the court said: 'Although the court had jurisdiction of the suit and of the parties the order for the preliminary injunction was unwarranted as a matter of law and the orders imposing the fines must, so far as they have not been executed, be held under the special circumstances of this case to be reviewable by this court, under the appeal from the final decree. The result is that they cannot be upheld."

That the view above expressed as to the purport of these authorities is correct is shown by Matter of Christensen Engineering Co., 194 U. S. 458, 460, where, after referring to these and other cases, it is said: "These authorities show that when an order imposing a fine for violation of an injunction is substantially one to reimburse the party injured by the disobedience, although called one in a contempt proceeding, it is to be regarded as merely an interlocutory order and to be reviewed only on appeal from the final decree."

We hold, therefore, that the present appeal must be dismissed because prosecuted from an interlocutory not a final decision.

We are not inattentive, in making this disposition of the case, to the argument that the conclusions announced here and in Marinan v. Baker, leave great power of oppression in a trial court. The answer to this is the familiar one that this is a matter for legislative rather than judicial redress. In many cases, however, such hardship will, as a practical matter, be obviated by bringing the case to speedy final decree when, as above indicated, ample right to review at least in civil contempt exists against improvident or oppressive interlocutory orders. The injunction bond can be made to avail for the enforced return of

fines improperly exacted . and in very doubtful cases a court will no doubt be open, as was the court in Worden v. Searls, *supra*, to the suggestion that pending final decree the payment of a fine imposed purely for purposes of compensation or reinbursement may be deferred, upon a proper bond, for payment in case of an adverse final decision. And if upon final hearing the decision be for the alleged contemner it is inconceivable that a righteous court will not.by the decree protect against a fine that may have been unjustly exacted.    But, however this may be, we cannot allow the suggestion that action of a trial court may impose hardships in some instances to operate against our declaration of what we find to be the law.    We find adapted to present day conditions, equally with when written in 1822, the words of Mr. Justice Story, as recorded in ex parte Kearney, 7 Wheaton 37, *supra*, where it is said: "The argument of inconvenience has been pressed upon us with great earnestness.    But where the law is clear, this argument can be of no avail; and it will probably be found, that there are also serious inconveniences on the other side. Wherever power is lodged, it may be abused.    But this forms no solid objection against its exercise.    Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice."

The appeal is dismissed.

### SYLLABUS (BY THE COURT.)

